## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 4:20-CV-00209-JHM**

**JAMES LEE MAYS**                                                                  **PLAINTIFF**

**v.**

**SOUTHERN HEALTH PARTNERS,** *et al.*                          **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendants' Motion and Amended Motion for Summary Judgment [DN 35; DN 39]. Additionally, the Court considers the Plaintiff's Motion to Supplement his Amended Response [DN 45]. Fully briefed, this matter is ripe for decision. Plaintiff's Motion to Supplement his Amended Response is **GRANTED**. Nevertheless, for the following reasons, the Motion and Amended Motion for Summary Judgment are **GRANTED**.

### I. BACKGROUND

The Plaintiff, James Lee Mays ("Mays"), *pro se*, is a pretrial detainee at the Daviess County Detention Center ("DCDC"). [DN 1]. Approximately two months before Mays's arrest, another individual struck him in the head with a baseball bat. [DN 39-5 at 1]. Authorities arrested him on July 23, 2020, and detained him at the DCDC.[1] [DN 35-1 at 2]. When Scotti Martin ("Martin") administered an initial health evaluation, Mays disregarded her questions, announcing he "was in a severe amount of pain . . . ." [DN 41 at 4]. Martin only took his temperature. [*Id.*].

The parties dispute what happened next. The Defendants allege—and record evidence shows—that staff observed Mays on July 24. Progress notes state Mays had a "raised area to right

---

[1] Mays Amended Response emphasizes he is only "challeng[ing] the medical treatment from the dates of 7/23/2020 to 7/26/2020." [DN 41 at 2]. Since Mays explicitly limits his challenge to the events of July 23 through July 26, the Court limits its analysis to this period and does not address later events.

side of head" with "no discoloration or warmth noted." [DN 35-3]. Mays asserts he did not receive additional treatment until July 25. [DN 41 at 5].[2]

On July 25, staff reported Mays as having a "headache" and "2-3+ pitting edema." [DN 35-5]. The notes relay Mays "was hit in the head approx. 2 months ago with a baseball bat, [and] there is a scar present in center of forehead." [*Id.*]. Mays alleges he "felt nausious [sic]" even though staff recorded "no dizzyness [sic]." [*Id.*]; [DN 41 at 8]. The attending medical professional gave him Tylenol for his head pain. [*Id.*].

The following day, Doctor Tamberly McCoy ("Dr. McCoy") examined Mays. [DN 41 at 9]. She discovered Mays's head had "mild soft tissue swelling" and an "old scar." [DN 35-6]. Mays maintains that, during the consultation, he told her that "both [his] head & neck were in an unbareable [sic] amount of pain." [DN 41 at 9]. Dr. McCoy prescribed Prednisone, an anti-inflammatory steroid. [DN 35-6]. Still, Mays lamented: "she performed no procedures." [*Id.*].

Mays's 28 U.S.C. § 1983 suit alleges DCDC staff were deliberately indifferent to his serious medical needs. *See* [DN 1]. He named five defendants in his Complaint: Martin; Dr. McCoy; nurses Jenny Phillips ("Phillips") and Cassie Thompson ("Thompson"); and the DCDC's healthcare provider, Southern Health Partners ("Southern") (collectively "the Defendants"). [*Id.*]. The Defendants moved for summary judgment [DN 35] and later amended that motion [DN 39]. Mays filed a response [DN 38] and amended response [DN 41], which he later moved to supplement [DN 45]. The Court now considers these motions.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter

---

[2] Mays states "survilance [sic] logs will confirm" this claim, but he did not furnish these logs to the Court.

of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56.  "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage."  *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion."  *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because

he "failed to present any evidence to defeat the government's motion"). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III. DISCUSSION

Procedurally, the Defendants moved for summary judgment, Mays responded, and he later moved to supplement his amended response. *See* [DN 45]. The Defendants did not contest this motion. The Court **GRANTS** Mays's Motion to Supplement his Amended Response and considers the arguments within.

"[P]retrial detainees have a constitutional right to be free from deliberate indifference to serious medical needs under the Due Process Clause of the Fourteenth Amendment." *Greene v. Crawford Cnty.*, No. 20-1715/1741, 2022 WL 34785, at *7 (6th Cir. Jan. 4, 2022). Under the Fourteenth Amendment, "[t]here are two parts to the claim, one objective, one subjective." *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 411 (6th Cir. 2005)).

"For the objective component, the detainee must demonstrate the existence of a sufficiently serious medical need." *Id.* A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). While Mays's head injury occurred months before his arrest, he still experiences side effects, including swelling, neck and head pain, blurred vision, and nauseousness. [DN 1 at 5].

Even assuming Mays's injuries constituted a "sufficiently serious medical need," he cannot satisfy the subjective prong. "A defendant must have not only acted deliberately (not accidentally),

4

but also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Brawner v. Scott Cnty.*, 14 F.4th 585, 596–67 (6th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). "A pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). "[B]ecause [the Court] cannot 'impute knowledge from one defendant to another[,]' we must 'evaluate each defendant individually[.]'" *Greene*, 2022 WL 34785, at *9.

### A. Scotti Martin

Martin performed Mays's initial health evaluation on July 23. Mays told Martin he "was in a severe amount of pain and that [his] neck was in severe pain as well." [DN 41 at 4]. He alleges "Martin disregarded [his] 'obvious' serious medical need for almost 3 days." [*Id.* at 7]. This is incorrect. While Martin did not treat Mays on July 23, she evaluated his injuries and determined they did not require immediate attention. Plus, evidence shows that Mays received additional evaluations and medications over the next three days. *See* [DN 39-3; DN 39-5; DN 39-6]. Martin's decision to delay treatment does not show "reckless disregard." *Brawner*, 14 F.4th at 596–97; *see also Bruederle v. Louisville Metro Gov.*, 687 F.3d 771 (6th Cir. 2012) (finding no deliberate indifference for delayed treatment). The Court **GRANTS** summary judgment as to Martin.

### B. Dr. Tamberly McCoy

Mays alleges that the Defendants, namely Dr. McCoy, "acted with negligence and mal-practice . . . ." [DN 1 at 5]; [DN 38 at 7, 24]. The Supreme Court has long held that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Brawner*, 14 F.4th at 596–97 (requiring "more than negligence" for

deliberate indifference).  Thus, Mays alleges the wrong standard against Dr. McCoy.

Furthermore, there is no evidence Dr. McCoy was deliberately indifferent to Mays's injuries.  Like Martin, Dr. McCoy knew Mays had been "struck over [his] head with an aluminum bat" and that his "head & neck were in an unbareable [sic] amount of pain . . . ."  [DN 41 at 9].  But, per Mays's own recitation of the facts, Dr. McCoy and the other staff provided aspirin and Prednisone to assuage Mays's swelling and pain.  [DN 39-5; DN 39-6].  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 6th Cir. 1976).  "A plaintiff can nevertheless satisfy this standard by demonstrating that a medical professional consciously expos[ed] the patient to an excessive risk of serious harm in administering treatment or rendered medical care so woefully inadequate as to amount to no treatment at all."  *Griffith v. Franklin Cnty.*, 975 F.3d 554, 568 (6th Cir. 2020) (internal quotation marks omitted).  Mays provides no such evidence that Dr. McCoy's treatment was "woefully inadequate."  Thus, the Court **GRANTS** summary judgment as to Dr. McCoy.

### C.  Cassie Thompson and Jenny Phillips

Mays has not provided any evidence or analysis demonstrating how Thompson and Phillips were deliberately indifferent to his medical needs.  *See* [DN 1; DN 38; DN 41].  While his Complaint mentions "other medical staff," this statement—if it refers to Thompson and Phillips—does not explain how these two acted indifferently to his medical needs.[3]  The Court **GRANTS** summary judgment as to Thompson and Phillips.

---

[3] His Complaint also states that nurses read "the result of [his] X-ray when they aren't qualified nor licenced [sic] to read the result . . . ."  [DN 1 at 5]; [DN 1-1].  This statement is irrelevant to a claim of deliberate indifference.

**D. Southern Health Partners**

Lastly, Mays made Southern a defendant in this case. "A private entity . . . that contracts to provide medical services at a jail can be held liable under § 1983 because it is carrying out a traditional state function." *Winkler v. Madison Cnty.*, 893 F.3d 877, 904 (6th Cir. 2018) (citing *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005)). "Like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory." *Karnes*, 398 F.3d at 877. "The difference, however, is that a private contractor is liable for a policy or custom *of that private contractor*, rather than a policy or custom of the municipality." *Id.*

Mays has not identified any policy or practice causing deliberate indifference to a serious medical need. His Complaint states the DCDC "put [him] on the medical insurance of the Southern Health Partners that would allow for the requested procedures to be performed [sic]. . . ." [DN 1 at 5]. But this coverage does not guarantee detainees their desired medical treatment. Accordingly, the Court also **GRANTS** summary judgment as to Southern.[4]

### IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Mays's Motion to Supplement his Amended Response [DN 45] is **GRANTED**. The Defendants' Motion and Amended Motion for Summary Judgment [DN 35; DN 39] are **GRANTED**. The Court will enter a judgment consistent with this opinion.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    James Lee Mays, *pro se*
       counsel of record

March 3, 2022

---

[4] Mays's Motion to Supplement [DN 45] quotes a Sixth Circuit discussion of Kentucky state immunity law to argue Southern should not receive qualified immunity. *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 744–51 (6th Cir. 2015). Since he raised only federal claims, this analysis is immaterial here.